IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BRICKSY H.,**[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 03961 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| **KILOLO KIJAKAZI,** Acting | ) |
| **Commissioner of Social Security,**[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Bricksy H.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 25, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 30, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

**I.     Procedural History**

On February 15, 2017, Plaintiff filed a claim for DIB and SSI, alleging disability since April 1, 2015 due to generalized anxiety, panic disorder, agoraphobia, depression, anxiety, PTSD, learning disability, and a bad gallbladder. [R. 102-103.] Plaintiff's claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 28, 2019. [R. 17.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 17.] A vocational expert ("VE") also testified at the hearing. [R. 17, 90.] On July 31, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 171.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

**II.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 153-154.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since April 1, 2015. [R. 154.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: anxiety and depression. [R. 154-157.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 157-159.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations. [R. 159-169.] Plaintiff could learn, understand, remember, and carry

out simple work instructions that involve only occasional reading through the junior high level; could perform occasional math that is simple in operation and allows for the use of a calculator; and could make simple decisions but could not work at a fast or high production rate such as chained assembly line work or periodically intense work. [R. 159-169.] Plaintiff could work at her own pace and can meet production goals so long as the production goals are not hourly or timed production goals. [R. 159-169.] Plaintiff's work must be learned by demonstration and should be routine and repetitive in operation with no more than occasional changes. [R. 159-169.] Plaintiff could not work in customer service or perform tasks involving the public, but could work with others on an occasional basis without teamwork or tandem work. [R. 159-169.] Plaintiff can tolerate typical supervision found in the unskilled environment so long as it is not high pressure, over-the-shoulder type of supervision. [R. 159-169.] The ALJ noted that with those limitations, Plaintiff could sustain any necessary concentration, persistence, or pace in two-hour increments throughout the typical workday. [R. 159-169.] At step four, the ALJ concluded that Plaintiff would not be able to perform her past relevant work as a machine tender, assembler, sales attendant, or sandwich maker. [R. 170.] At step five, the ALJ concluded that based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, however, Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 170-171.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

3

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

4

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## II. Analysis

Plaintiff makes three arguments challenging the ALJ's decision, including: (1) the ALJ improperly evaluated the opinion of a consultative examiner; (2) the ALJ improperly evaluated treating physician and therapist evidence; (3) the ALJ failed to adequately support the RFC. After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred in evaluating the opinion of Plaintiff's treating physician. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments.

Plaintiff's treating psychiatrist, Dr. Susan Lin, M.D., completed a mental residual functional capacity statement in May 2018 that identified a number of likely work-preclusive impairments. Among other limitations, Dr. Lin opined that Plaintiff's limited ability to maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances would preclude performance of work for 15% or more of an 8-hour workday. [R. 759.] Dr. Lin further opined that several other limitations—including Plaintiff's limited abilities to sustain an ordinary routine

5

without supervision, work in coordination with or in proximity to others without distraction, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods—would also preclude Plaintiff from performing work for 15% or more of an 8-hour workday. [R 759.] Dr. Lin concluded that Plaintiff would likely be off task more than 30% of the workday and absent from work more than 6 days a month due to her mental impairments. [R. 760.]

The ALJ assigned limited weight to Dr. Lin's opinions. The ALJ found that Dr. Lin's treatment notes, therapy notes, and other medical records generally did not corroborate the level of impairment Dr. Lin identified. [R. 167.] The ALJ further noted that Plaintiff's ability to advocate for her son and keep up with the specifics of his schooling, and at times perform his homeschooling curriculum, were inconsistent with the substantial limitations found by Dr. Lin. [R. 167.] The ALJ also believed that some of Dr. Lin's opinions were based on Plaintiff's subjective reports, and that Dr. Lin's treatment notes generally indicated stable conditions and did not reflect any change in medication or treatment regimens. [R. 167.].

Under the then-operative regulations, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported" by medical findings and "not inconsistent with the other substantial evidence" in the record.[3] 20 C.F.R. §404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). If a treating physician's opinion is not given controlling weight by an ALJ, the ALJ must determine what

---

[3] The "treating physician rule" has been rescinded for claims filed after March 27, 2017 "to eliminate the 'controlling weight' instruction," *Kaminski v. Berryhill*, 894 F.3d 870, 874, n.1 (7th Cir. 2018) (comparing 20 C.F.R. § 404.1527(c) (for claims filed before March 27, 2017), with 20 C.F.R. § 404.1527(c) (for claims filed on or after March 27, 2017)), but Plaintiff's claim in this case was filed before that controlling date, on February 15, 2017. [R. 101-102.]

weight it merits by considering the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; and (4) the consistency and supportability of the opinion. 20 C.F.R. § 404.1527(c); *Gerstner*, 879 F.3d at 263. The ALJ "must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation omitted).

Given this standard, the ALJ erred in assessing Dr. Lin's opinions. The Commissioner correctly frames this case as a battle of competing medical opinions. Def's Mot. at 1. On the one hand, Dr. Lin and Plaintiff's treating therapist opined to a number of work-preclusive mental limitations; on the other hand, as reflected in the RFC, two agency consultants opined that Plaintiff could perform certain unskilled work, with additional limitations. The problem upon review, however, is that the ALJ did not adequately explain why she sided with the agency consultants, crediting their opinions and using them to construct the RFC, while assigning limited weight to Dr. Lin's opinions.

The reasoning that the ALJ gave for assigning little weight to Dr. Lin's opinions was not sufficient. First, the ALJ noted that Dr. Lin's treatment notes and Plaintiff's therapy notes and other medical records did not support the degree of impairment Dr. Lin identified. [R. 167.] But the ALJ did not explain *why* that was the case, or identify *what records* were inconsistent with Dr. Lin's opinions. This mirrored the ALJ's discussion of the agency consultants, which recounted their opinions and explained that Plaintiff's condition did not meaningfully change after their review, but contained no discussion of *why* the agency consultants' opinions were consistent with the medical record and identified no purportedly consistent medical records. [R. 166.] The ALJ's blanket statement that Dr. Lin's opinions were not corroborated by the record writ large is an "entirely unhelpful" conclusion that "provides no indication of which portions of the record might

7

actually be" inconsistent with Dr. Lin's opinions. *Schmidt v. Colvin*, 545 F. App'x 552, 557 (7th Cir. 2013); *see also Jarnutowski v. Kijakazi*, --- F.4th ---, 2022 WL 4126293, at *6 (7th Cir. Sept. 12, 2022) (rejecting as insufficient ALJ's rote conclusion that a treating physician's opinions were "inconsistent with the longitudinal record."). Ultimately, the ALJ picked between competing sets of expert opinions without sufficient analysis of why she picked one set of opinions or how those opinions compared to the medical record.[4] This was error.

The ALJ also found that Plaintiff's ability to advocate for her son's schooling and at times perform his home school curriculum undermined Dr. Lin's opinions. But this appears to be a textbook case of an ALJ improperly ignoring the "critical differences between keeping up with activities of daily living and holding down a full-time job." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020). Although "it is proper for the Social Security Administration to consider a claimant's daily activities in judging disability," the Seventh Circuit has "urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member." *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014). Indeed, parents "*must* take care of [their] children," and that imperative may "impel [them] to heroic efforts." *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). Here, although the ALJ placed significant emphasis on Plaintiff's ability to attend meetings related to her child's education and at times oversee his homeschooling program, the ALJ neither considered Plaintiff's limitations in doing so, nor explained how those activities were inconsistent with any of the

---

[4] Of course, the ALJ did provide a detailed *summary* of the medical record, but the ALJ never *analyzed or compared* the medical record to explain why it was consistent with the agency consultants' opinions and inconsistent with Dr. Lin's opinion. A summary of the record alone does not reveal how the ALJ arrived at her assessment of the medical opinion evidence. *See, e.g., Jennifer S. v. Kijakazi*, No. 3:20-CV-50239, 2022 WL 279554, at *6 (N.D. Ill. Jan. 31, 2022) ("A mere summary is not the same as meaningful analysis.").

specific limitations Dr. Lin identified. For instance, Plaintiff testified that she never attended meetings related to her son's education alone; she was always accompanied by her sister, an attorney, or her son's psychologist, because she did not know if she would be able to talk at the meetings. [R. 53-54.] Plaintiff also testified—and the record reflects—that these meetings caused Plaintiff an enormous amount of anxiety. [R. 54-55, 864, 866, 885.] Moreover, the ALJ did not explain how attending occasional meetings (with social support), communicating with school employees, and at times overseeing her son's homeschooling,[5] were inconsistent with Dr. Lin's opinions, which related to Plaintiff's ability to sustain an eight-hour-a-day, five-day-a-week job. Nor is any such inconsistency necessarily apparent from the record to the Court. Plaintiff's ability to advocate for and care for her son in the way the ALJ identifies says little, for instance, about whether Plaintiff would be unable to maintain concentration and perform at a consistent pace for more than 15% of an eight-hour workday, or whether Plaintiff's well-documented anxiety would, over time, result in excessive absences *from a full-time job*. The ALJ's failure to account for the differences between Plaintiff's advocacy for and care of her son and the demands of a competitive work environment, and failure to consider the full context of Plaintiff's activities in assessing Dr. Lin's opinion, was error.

    The ALJ also noted that Dr. Lin's records regularly documented two stable conditions (major depressive disorder and generalized anxiety disorder). [R. 167, 940.] But "[s]imply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is

---

[5] Plaintiff testified that this involved setting up her child—who has been diagnosed with autism—on a computer where he would read or watch a video. In addition, Plaintiff would scan and email her son's homework assignments, and Plaintiff indicated she completes some of her son's homework assignments, though they have become too difficult for her as her son has gotten older. [R. 55-58; 88.] Plaintiff testified that her brother also assisted her with her son's homework. [R. 88.]

capable" of working full-time. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014), *as amended* (Aug. 20, 2014). "'[S]table' merely means that Plaintiff's condition is unchanged; it does not address the level of what [Plaintiff's] condition was." *Seruya v. Berryhill*, No. 16 C 10896, 2017 WL 4650886, at *5 (N.D. Ill. Oct. 17, 2017). Here, the ALJ—in assessing Dr. Lin's opinions and the agency consultants' differing opinions—failed to meaningfully assess the medical record to determine Plaintiff's level of functionality notwithstanding the "stability" of her condition.

True, the ALJ did identify some proper considerations in affording little weight to Dr. Lin's opinions—*e.g.*, the stability of Plaintiff's medication regimen and the possibility that some of Dr. Lin's opinions reflected only Plaintiff's subjective complaints, [R. 167]. But given that many of the reasons that the ALJ gave for rejecting Dr. Lin's opinion—including the ALJ's "assessment" of the medical record and consideration of Plaintiff's activities—were not sufficiently explained or erroneous, the Court cannot say that the ALJ built an accurate and logical bridge in her assessment of Dr. Lin's opinions. It was especially important for the ALJ to do so in a case like this which, as the Commissioner recognizes, was a battle of competing expert medical opinions. Def's Mot. at 1. In this case, the ALJ recognized that Plaintiff had serious symptoms that warranted significant limitations, but did not provide a sound, logical, or accurate explanation for why she assigned great weight to the agency consultants' view of the appropriate limitations over and above Dr. Lin's view of Plaintiff's limitations. This was an error that warrants remand.

Because the ALJ's failure to properly evaluate medical opinion evidence alone warrants remand, the Court need not evaluate the remaining issues identified by the Plaintiff. On remand, however, the Administration should not construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [25] is granted, and the Commissioner's motion for summary judgment [30] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 9/30/2022

                                                              BETH W. JANTZ
                                                              United States Magistrate Judge